**DEDHAM WATER CO. and Dedham–Westwood Water District,**
**Plaintiffs,**

v.

**CUMBERLAND FARMS DAIRY, INC., Defendant.**

Civ. A. No. 82–3155–S.

United States District Court,
D. Massachusetts.

July 29, 1991.

Thomas F. Holt, Jr., with whom Nancy B. Reiner, DiCara, Selig, Sawyer & Holt, Boston, Mass., John R. Cope and Bracewell & Patterson, Washington, D.C., were on brief, for plaintiffs.

Allan van Gestel with whom Henry C. Dinger, Christopher P. Davis, A. Lauren Carpenter and Goodwin, Procter & Hoar, Boston, Mass., were on brief, for defendant.

**FINDINGS OF FACT, RULINGS OF LAW AND ORDER FOR JUDGMENT**

SKINNER, District Judge.

This is an action by the plaintiffs to recover the costs of building and operating

a water treatment plant to remove pollutants from the White Lodge Well Field, its primary source of water. Dedham Water's claim is based on the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq,* and the parallel Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E, §§ 4 and 5. The case was originally tried without a jury before Judge Tauro, who found as a fact that the pollution of the plaintiffs' well field was not caused by the release of contaminants from the defendant's facility. Judgment for the defendant was entered. 689 F.Supp. 1223 (D.Mass.1988). This finding was not challenged on appeal, but the case was nevertheless reversed and remanded for a determination of whether the treatment plant was built in response to a threat of release of contaminants from the defendant's facility to the plaintiffs' well field. 889 F.2d 1146 (1st Cir.1989). The case was redrawn to me pursuant to LR 40.1(i).

Notwithstanding the finding that the actual pollution of the plaintiffs' well field by volatile organic chemicals ("VOCs") was not caused by releases from the defendant's facility, the plaintiffs also assert that they responded to the threat of such releases. The defendant contends that the plaintiffs had decided to follow a particular course of action, the construction of a water purification plant, in response to the discovery of actual pollution of the well field long before they had any reason to believe there was a threat of future contamination emanating from the defendant's land. The chronology of events is accordingly very important.

From as early as 1974, the plaintiffs had been aware of heavy metal contamination in the well field, principally iron and manganese, which discolored the water. The plaintiffs' officials had been contemplating a treatment plant to eliminate this material by filtration. In 1979 VOCs were discovered in the well field around wells 3 and 4. In 1980, the engineering firm of Metcalf & Eddy recommended to the plaintiffs that a

two-stage treatment plant be constructed providing for filtration to remove the iron and manganese and air stripping to remove the VOCs. In 1981, the plaintiffs discovered that similar VOCs had been released on the defendant's property. The plaintiffs then hired the firm of Gerahty & Miller (G. & M.), well-known hydrogeologists, to conduct a study. It would appear from defendant's exhibit 172, a memo from American Water Works Service Co., Inc.[1], that the purpose of the G. & M. survey was to identify the entity or entities responsible for the release of the VOCs for the purpose of bringing a suit for damages. During 1982, G. & M. filed a series of reports in which they concluded that the defendant's facility was the source of the VOCs which were polluting the plaintiffs' well field, and that the Neponset River, which runs between the properties, did not constitute a barrier to the migration of pollutants from the defendant's land to the plaintiffs' well field.

I find that, at that point, it was reasonable for the plaintiffs to believe that the VOCs had migrated from the defendant's facility to the well field and might continue to do so in the future. Even though it has now been judicially determined in the prior trial in this case that the offending VOCs were not released by the defendant, I find that there is a rather remote possibility (a "potential threat" to use Dr. Guswa's redundant expression) that VOCs from the defendant's facility might migrate to the plaintiffs' well field at some time in the future if geological conditions should change.

As far as I can tell from this record, however, the response for which the plaintiffs seek reimbursement was not related to the "potential threat." The two-stage treatment plant recommended by Metcalf & Eddy in 1980 is substantially what was built. To be sure, the plant was not constructed until 1985, after the time when the plaintiffs reasonably believed that the defendant's facility was the source of exist-

**1.** This corporation and Dedham Water Co., one of the plaintiffs, were both subsidiaries of American Water Works Company, Inc. This company provided management and engineering services to the plaintiffs.

ing pollution and a threat of future pollution of the well field. Many of the necessary authorizing votes of the Board of Directors were taken after 1982, but they concerned regulatory delays, zoning problems and objections of abutters. The only action that appears to me to relate to the G. & M. report is the decision in 1982 to commence this action for damages.

It is true that Mr. Johnstone, a director of the plaintiff Dedham Water Company, testified that the perceived threat of future contamination was what "drove" the directors to carry out the plan to build the treatment plant. Mr. Johnstone was a facile witness, but not a particularly persuasive one. I question his ability to give authoritative testimony as to the state of mind of the other directors, in the absence of any record or memorandum. The minutes of the board of directors do not corroborate his testimony. I am not persuaded that his testimony is more likely true than otherwise.

The defendant, according to the testimony in this case, is a blatant polluter, and the plaintiffs operate a public water supply system. It would be gratifying to exact reimbursement from the defendant for the benefit of the plaintiffs. As long as causation is a necessary element of liability, however, I cannot do so on this record.

Accordingly, judgment shall be entered for the defendants.