**STATE OF ARIZONA and City of Phoenix, Plaintiffs,**

**v.**

**MOTOROLA, INC., et al., Defendants.**

**No. CIV 89–1700–PHX–CAM.**

United States District Court, D. Arizona.

July 20, 1992.

See also, 774 F.Supp. 566.

M. James Callahan, H. Paul Graves, Asst. City Atty., Phoenix City Attorney's Office, Christopher D. Thomas, Karen L. Peters, Mark E. Freeze, Squire, Sanders & Dempsey, Phoenix, Ariz., for City of Phoenix.

Linda J. Pollock, Asst. Atty. Gen., Office of the Arizona Atty. Gen., Civ. Div., Cynthia T. Kuhn, Asst. Atty. Gen., Tucson, Ariz., Norman D. James, John M. Pearce, Ryley, Carlock & Applewhite, Phoenix, Ariz., for State of Ariz.

David G. Campbell, Shane R. Swindle, Meyer, Hendricks, Victor, Osborn & Maledon, Phoenix, Ariz., for Allied–Signal, Inc.

Newman R. Porter, Lewis and Roca, Phoenix, Ariz., for Digital Equipment Corp.

Rich Alpert, Cindy Lewis, Digital Equipment Corp., Maynard, Mass., James L. Meeder, Brendan Dolan, Beveridge & Diamond, San Francisco, Cal., F. Paul Beer, Beer and Toone, P.C., Phoenix, Ariz., for Baker Commodities, Inc.

Robert H. Allen, Allen, Kimerer & LaVelle, Phoenix, Ariz., for Pasqualettis Properties, Inc., Pasqualetti Properties, and Amos and Edna Pasqualetti.

Judith M. Dworkin, Gust, Rosenfeld, Phoenix, Ariz., for FCC Investors, Inc., f/k/a Valley Seed Co.

David Hadley, Jr., Hadley, Poach & Harraway, P.C., Phoenix, Ariz., for Hill Bros. Chemical Co.

## MEMORANDUM and ORDER

MUECKE, District Judge.

Having considered all the briefing filed with regard to defendants' joint motion for partial summary judgment regarding the causation defense, the Court finds that this matter is appropriate for submission without oral argument[1], and concludes as follows:

## BACKGROUND

In October 1989, the Arizona Department of Environmental Quality ("ADEQ") and the City of Phoenix ("City") filed suit against sixteen separate defendants, seeking to recover approximately $54 million in cleanup costs incurred or to be incurred as a result of the toxic wastes found at the 19th Avenue Landfill in Phoenix ("the Landfill"). In July 1990, Judge Copple ruled that the State of Arizona ("State") must be substituted as plaintiff for ADEQ. Therefore, all references to plaintiffs will include the State of Arizona and the City of Phoenix.

The State and the City seek to recover the cleanup costs pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq. CERCLA was amended by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99–499, 100 Stat. 1613 (1986), known as "SARA."

In the lead case, No. CIV 89–1700–PHX–CAM, in this consolidated matter ("Lawsuit I"), the State of Arizona and the City of Phoenix joined as plaintiffs to seek recovery of costs which either were incurred or were to be incurred in response to the alleged release or threatened release of hazardous substances from the 19th Avenue Landfill. In the second lawsuit, the State of Arizona filed a complaint against

---

**1.** A district court has the discretion to rule on motions without a hearing. *See United States Fidelity and Guaranty Co. v. Lawrenson,* 334 F.2d 464, 467 (4th Cir.), *cert. denied,* 379 U.S. 869, 85 S.Ct. 141, 13 L.Ed.2d 71 (1964); Fed. R.Civ.P. 78.

the City of Phoenix, *State of Arizona v. City of Phoenix*, 774 F.Supp. 566 ("Lawsuit II"). This lawsuit was filed to facilitate the approval of the consent decree between the State and the City.

The United States Environmental Protection Agency ("EPA") is primarily responsible for undertaking the cleanup of hazardous substances. 42 U.S.C. § 9604(a)(1). The EPA, among other things, conducts investigations and determines the risks to public health and the environment. *Id.* In 1983, EPA placed the Landfill on the National Priorities List ("NPL"). Pursuant to the National Contingency Plan ("NCP"), a comprehensive environmental investigation of the Landfill was performed and the feasibility of various remedial alternatives analyzed. The City conducted a Remedial Investigation/Feasibility Study ("RI/FS"), with EPA approval, to evaluate historic or current releases or threats of releases of hazardous substances in to the environment from the landfill, and to recommend a cost effective remedial action for the site. The City produced a Remedial Action Plan ("RAP"), which designated remedial action at the Landfill. ADEQ approved of Alternative A as the remedy, and EPA agreed with that conclusion, in its Record of Decision ("ROD"). Specifically, the EPA and the ADEQ stated that those actions under the remedy, which were identical or similar to landfill closure actions, were eligible costs of response under CERCLA § 107, 42 U.S.C. § 9607.

## DISCUSSION

### I. *Summary Judgment*

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rules of Civil Procedure, Rule 56(c). The party seeking summary judgment bears the initial responsibility of showing the absence of a genuine issue for trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must provide to the court a statement of specific uncontroverted facts, separate from its motion for summary judgment, on which it bases its motion. District of Arizona, Local Rule 11(*l*)(1). The moving party need not present affidavits or other materials negating the opponent's claims, but need only inform the court of the basis of its motion and indicated those portions of the pleadings and any other evidentiary matter listed in Rule 56(c) that support its contention that no genuine issue of fact exists. *Celotex,* 477 U.S. at 323–324, 106 S.Ct. at 2553. The moving party must cite specifically the portion of the record where the court can find the particular facts supporting its motion. District of Arizona, Local Rule 11(*l*)(1).

To defeat the motion, the party opposing summary judgment must establish that a genuine issue of fact exists with respect to any element for which it bears the burden of proof at trial. *British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund*, 882 F.2d 371, 374 (9th Cir.1989). The opposing party may not merely rely on the assertions and allegations of the pleadings, but instead must set forth specific facts showing a genuine issue for trial. Federal Rules of Civil Procedure, Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Like the moving party, the party opposing the motion must direct the court's attention to where those facts appear in the pleadings, affidavits, and other evidentiary matter used to support the opposition; merely citing the record without designating where the fact is stated is not sufficiently specific. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. If the opposing party does not respond in the manner specified in Rule 56(e), summary judgment will be granted. Federal Rules of Civil Procedure, Rule 56(e).

### II. *Joint Motion for Partial Summary Judgment Regarding Cause of Alleged Response Costs*

CERCLA imposes strict liability on responsible parties. 42 U.S.C. § 9601(32); *New York v. Shore Realty Corp.*, 759 F.2d

1032, 1043, n. 16 (2d Cir.1985). To establish liability under CERCLA, a plaintiff must prove:

> (1) that the site in question is a "facility" as defined in § 9601(9); (2) that a release or a threatened release of a hazardous substance has occurred; (3) that the release or threatened release has caused the plaintiff to incur response costs that are consistent with the national contingency plan; and (4) that the defendant is a responsible person[2] under § 9607(a);

*Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1152 (9th Cir.1989); *Amoco Oil Company v. Borden, Inc.,* 889 F.2d 664, 668 (5th Cir.1989).

In asserting the causation defense, defendants argue that, any releases or threats of release[3] of hazardous substances at the Landfill have not caused and will not cause plaintiffs to incur alleged response costs related to a CERCLA remedial action.[4] Motion, at 1. Instead, according to defendants, those costs are the result of the City's pre-existing obligations to implement and construct ordinary landfill closure and flood protection measures. Motion, at 2, Reply Statement of Facts ("RSOF"), at paras. 1–11, 21, Causation Statement of Facts ("CSOF"), at paras. 19–25, 27–28. In particular, defendants protest certain activities, such as the construction, installation and maintenance of a soil cap, flood protection (refuse washout prevention) measures, a methane gas collection system, as well as groundwater monitoring and general post-closure site monitoring, operation and maintenance. Motion, at 2.

Defendants argue that the material facts are undisputed that plaintiffs' alleged response costs as listed above were not and could not have been caused by a release or a threat of a release of hazardous substances under CERCLA, and therefore, defendants are entitled to judgment as a matter of law. Motion, at 4–5. Defendants contend that decisions to undertake measures before learning of contamination of a facility are not the type of measures that could have been taken in "response" to a CERCLA threat, even if the measures fall coincidentally within the definition of CERCLA removal actions. Motion, at 6–7, citing *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 770 F.Supp. 41, 42 (D.Mass.1991); *Amland Properties Corp. v. Aluminum Co. of America,* 711 F.Supp. 784, 795 (D.N.J.1989).

Plaintiffs counter that CERCLA § 107(a) imposes only a minimal causation requirement on plaintiffs, which applies only to cases of threatened releases. Motion, at 3, citing *Mid Valley Bank v. North Valley Bank,* 764 F.Supp. 1377, 1388 (E.D.Cal. 1991); *City of New York v. Exxon Corp.,* 766 F.Supp. 177, 193 (S.D.N.Y.1991).

CERCLA § 107(a) holds four (4) classes of persons liable for response costs at a facility ...

> (4) ... from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

---

**2.** CERCLA requires, among other things, that a party fall within at least one of four classes of "person" enumerated in § 107(a). A party may be found to be liable if it is an (1) operator; (2) owner; (3) generator; or (4) transporter of hazardous substances. 42 U.S.C. § 9607(a)(1)–(4).

**3.** A "release" is defined as "... any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing hazardous substance or pollutant or contaminant), ..." 42 U.S.C. § 9601(22).

**4.** "Response" costs are broadly defined under CERCLA to include removal, remedy, and remedial action, and enforcement actions related thereto. CERCLA § 101(25). "Remove" or "Removal" refers generally to cleanup and short-term relief. In particular, the terms refer to such actions as may be necessary to "prevent, minimize, or mitigate damage to the public health or welfare or to the environment ..." CERCLA § 101(23). "Remedial" actions are those that are consistent with permanent remedies taken instead of or in addition to removal. CERCLA § 101(24). Specifically, the term includes, but is not limited to, actions such as "storage, confinement, perimeter protection using dikes, ... clay cover, ... and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment." CERCLA § 101(24).

42 U.S.C. § 9607(a)(4).

Courts have struggled with the language in the above statute as to whether the clause "which causes the incurrence of response costs" solely modifies the term "threatened release" or also can be construed to modify "release." Under any interpretation courts generally accept that the aforementioned phrase in § 9607(a)(4) applies to the covered persons listed in § 9607(a)(1)–(4). *See New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043, n. 16 (2d Cir.1985); *Mid Valley Bank*, 764 F.Supp. at 1387–88.

▪ Before turning to the statutory interpretation dilemma, the Court feels compelled first to note CERCLA does not require that plaintiffs establish a causal link between each responsible party and the incurrence of response costs.[5] *United States of America v. Alcan Aluminum Corp.*, 964 F.2d 252 (3rd Cir.1992) (the "Government must simply prove that the defendant's hazardous substances were deposited at the site from which there was a release and that the release caused the incurrence of response costs."); *U.S. v. Western Processing Co., Inc.*, 734 F.Supp. 930, 936 (W.D.Wash.1990) (a plaintiff need not prove that as to each generator of hazardous waste in a multi-defendant case, response costs were incurred); *United States v. Stringfellow*, 661 F.Supp. 1053, 1059 (C.D.Cal.1987) (where a government has incurred response cost in response to a release, it does not need to link the incurred costs with each defendant's activities); *United States v. Wade*, 577 F.Supp. 1326, 1333 (1983) (the release which results in the incurrence of response costs and liability need only be of a hazardous substance and not necessarily one contained in the defendant's waste).

In considering the causation issue, the court in *Shore Realty* reasoned that, based on the grammatical structure of the § 107

sentence, and the Legislative history, strict liability is to be imposed [on the current owner of a facility] without regard to causation. 759 F.2d, at 1044. In addition, the court found that to interpret § 9607(a)(1), which concerns an owner operator, as including a causation requirement would make "superfluous" the affirmative defenses provided in § 9607(b). 759 F.2d at 1044.

In *Ascon*, the Ninth Circuit listed as the third element in establishing a prima facie case under CERCLA to be where "(3) such 'release' or 'threatened release' has caused the plaintiff to incur response costs that are 'consistent with the national contingency plan,....'" *Ascon*, 866 F.2d at 1152. However, this Court agrees with the *Mid Valley* Court which characterized the *Ascon* court's third element as *dicta*. *Mid Valley*, 764 F.Supp. at 1388. The *Mid Valley* court reasoned that the third element essentially was *dicta* because the causation element was not necessary to the resolution of the case in *Ascon*. The *Ascon* court simply did not address the causation issue and grammatical problems in § 9607(a)(4).

▪ This Court does not feel compelled to solve this grammatical perplexity to resolve this motion. Even assuming—without deciding so—that the causation requirement applies to a release, as well as a threatened release, this court believes that any causation requirement under CERCLA is a weakened standard. At the most, the issue of causation would involve a factual determination of not whether defendants hazardous waste caused response costs, but, rather, whether a release or threatened release caused plaintiffs to incur response costs. This is not an inquiry into plaintiffs' state of mind. *Mid Valley*, 764 F.Supp. at 1389. Instead, it is a "factual inquiry into the circumstances of the case and should focus on whether the particular hazard justified any response actions."

5. Further, the only defenses recognized under CERCLA providing for nonliability is where the release is due to (1) an act of God; (2) an act of war; or (3) an act or omission of a wholly unrelated third party. 42 U.S.C. § 9607(b); *United States v. Bliss*, 667 F.Supp. 1298, 1304 (E.D.Mo.1987). A person liable under CERCLA is entitled to these defenses if he or she can establish, by a preponderance of the evidence, that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by one or more such acts or omissions. 42 U.S.C. § 9607(b).

*Amoco Oil,* 889 F.2d at 670. Therefore, under either interpretation of the § 107 sentence, this Court believes there are disputed questions of material fact remaining, and that the determination more properly will be made at trial.

■ Plaintiffs argue that the response costs are those incurred and to be incurred to implement the Alternative A remedy set forth in the Remedial Action Plan ("RAP"), the EPA Record of Decision ("ROD"), the ADEQ letter of determination, the City-State Consent Decree, and the RI/FS. Motion, at 4–5.

The City/State consent Decree implements the remedy selected in Alternative A of the RAP. Defendants' Statement of Facts ("DSOF"), at para. 27. This remedy provides, among other things, for (1) building a dike, levee and river bank protection system to prevent washout of refuse, (2) closing the landfill with a cap of compacted soil, (3) installing an appropriate methane gas collection system, (4) monitoring the groundwater quality and providing other post-closure monitoring and site maintenance; and (5) limiting site access with a chain link fence and landscaping the perimeter of the Landfill. DSOF, at paras. 14, 16–20, 27, 30. Defendants argue that none of these activities are related to defendants depositing of refuse in the landfill, but, rather, would have been performed regardless of whether they had deposited in that location. Motion, at 13–14, DSOF, at paras. 1–22, 14–16, 21–25, 26–30.

As plaintiffs point out, both EPA and ADEQ have determined that there have been both releases and threats of releases of hazardous substances from the Landfill. Plaintiffs' Statement of Facts ("PSOF"), at paras. 7–10; 16–27. Although defendants disagree, such disagreement is based on contradictory expert testimony. PSOF, at paras. 25–27. This Court is not required to, and should not, conduct a *de novo* review of all the facts and circumstances considered by the governmental agencies in concluding that there has been both releases and threats of releases of hazardous substances from the Landfill, and what measures belong in the appropriate remedial action plan. This Court must grant deference to agency decisions. *United States v. Northeastern Pharmaceutical & Chemical Co.,* 810 F.2d 726, 748 (8th Cir.1986); *United States v. Cannons Engineering Corp.,* 899 F.2d 79, 87 (1st Cir.1990) (an agency's determination must be upheld unless it is "arbitrary, capricious and devoid of a rational basis").

■ Essentially, defendants argue that any necessary work is a result of the City's choice in location and operation of the Landfill, the City's pre-existing obligations, and the State's failure to force performance under those obligations. Motion, at 4; RSOF 1–11, 21, CSOF at paras. 19–25, 26, 27–28, 16, 20, 30. Therefore, according to defendants, plaintiffs' prior obligations cannot become CERCLA claims after the fact. Motion, at 7.

Defendants rely heavily on *Dedham Water Co.* and *Amland Properties Corp.* Motion, at 6–7. In *Dedham Water Co.,* on remand from the First Circuit, the Court found that the plaintiff did not show that the response costs for which it sought reimbursement were caused by a potential threat from the defendant. *Dedham Water Co.,* 770 F.Supp. at 42. The court further noted that defendant's threat of release could not be found liable for causing plaintiff's response costs where the plaintiff had decided to build the specific treatment plant before the time plaintiffs reasonably believed that the defendant's facility was the source of existing pollution in the well field. 770 F.Supp. at 42. This Court does not find the reasoning of the district court decision in *Dedham Water* persuasive. The *Dedham* court does not address the relevant CERCLA provisions, and this Court is not required to follow the reasoning in *Dedham.*[6]

---

6. Before remanding for the second district court opinion, the First Circuit noted that the causation issue involves only a determination of whether the release or threatened release caused plaintiff to incur response costs, not whether a defendant caused actual contamination of a plaintiff's property. 889 F.2d 1146, 1152–52 (1st Cir.1989).

In *Amland Properties Corp.*, defendants argue that the Court found that plaintiff had not incurred response costs such as to erect a fence around a plant and post a guard because those measures were undertaken prior to the time when plaintiff first became aware of the contamination at the plant. 711 F.Supp. at 795. Defendants reliance on *Amland Properties Corp.* is misguided. The court did not make a determination of what remedial actions could be undertaken which may have been considered prior to the discovery of the release or threat of release. Rather, the court's determination turned on the definition of "removal" actions. *Id.* Indeed, the court noted that the "distinction between these actions [removal or remedial] is of no small importance, for whereas removal actions need only comply with the relatively simple NCP requirements ... remedial actions must comport with the more detailed procedural and substantive provisions of the NCP ...'" (citations omitted). Because the actions taken in *Amland* were removal actions, they could not have been undertaken in response to immediate health or environmental threats, where they were taken prior to the discovery of immediate threats, and the costs incurred could not be recovered under CERCLA. This Court believes that the *Amland* court's analysis is not only fact specific, it is dissimilar and not dispositive of the present situation. In the present situation, the questioned responsive actions are not clearly either removal or remedial, however, they may be the latter. If so, the *Amland* decision is clearly distinguishable. If not, this Court is not required to follow the *Amland* court's reasoning. In any event, this court declines to follow the *Amland* court's analysis, because it does not adhere to CERCLA's policy favoring early settlement and avoiding the costs and expense of litigation.

This Court finds defendants' arguments insufficient. Defendants' interpretation of CERCLA is unpersuasive. It would be contrary to CERCLA's intentions to provide that a responsible defendant cannot be held liable where an appropriate remedy contained any provisions identical to landfill closure aspects, or floodplain requirements. If that were the situation, then responsible defendants would construct a laundry list of measures which, because they were identical to other sound engineering and landfill management principles, would allow defendants to be absolved from costs, even though those activities may be needed to accomplish proper cleanup and containment according to an RAP. Indeed, in CERCLA, the terms remedy and remedial action includes such actions as "confinement, perimeter protection using dikes, trenches or ditches, clay cover, ... diversion, ... and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment." CERCLA § 101(24). Further, the EPA has adopted similar on-site containment approaches. PSOF, at para. 30 (EPA's "ROD Annual Report: FY 1989"); RSOF, at pars. 30–31, Exh. 2 (EPA Technical Guidance Document for Final Covers on Hazardous Waste Landfills and Surface Impoundments).

Finally, this Court believes that CERCLA is silent as to whether any activities contemplated prior to the discovery of a release or a threat of release, which ultimately are identical or similar to measures of the remedial action plan, cannot be recovered from responsible parties. This Court is convinced that sufficient contested issues of material fact remain which preclude the grant of partial summary judgment. This Court agrees with the *Mid Valley* court, in that, where there are disputed material facts remaining concerning causation and the associated response costs, the factual inquiry is more properly for the jury to decide as to whether the release or threat of release justified each particular responsive action. *Mid Valley*, 764 F.Supp. at 1389.

Based on the foregoing, IT IS ORDERED THAT:

(1) Defendants' joint motion for partial summary judgment regarding cause of response costs (Doc. # 612) IS HEREBY DENIED.