97 F.3d 1461
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
STATE OF CALIFORNIA, on Behalf of the STATE OF CALIFORNIA
DEPARTMENT OF TOXIC SUBSTANCES CONTROL, Plaintiff-Appellee,
v.
COURT GALVANIZING, INC.; Ronald North, Defendants-Appellants.
 No. 95-15445.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 16, 1996.
Decided Sept. 13, 1996.
 
 Before: NORRIS, T.G. NELSON, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendants-appellants Court Galvanizing, Inc. (Court Galvanizing) and Ronald North (North) (collectively appellants) appeal from the district court's grant of summary judgment on both liability and recoverable costs of $202,178.68 for plaintiff-appellee State of California, on behalf of its Department of Toxic Substances Control (DTSC), in its cost recovery action under § 107(a) of the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607(a).
 
 
 3
 We have jurisdiction over this timely appeal under 28 U.S.C. § 1291 and we affirm.
 
 BACKGROUND
 
 4
 Court Galvanizing constructed a custom metal galvanizing operation on undeveloped property in Davis, California (the Davis site), in 1966, and operated the facility until 1988. North served as the on-site manager, exercising day to day operational control for that entire period.[1]
 
 
 5
 Starting in February, 1985, the Regional Water Quality Control Board (RWQCB), a state agency charged with protecting California's water quality, conducted inspections and soil testing at the Davis site which revealed copper, chromium, lead, and zinc contamination. The RWQCB requested a remedial action plan from Court Galvanizing and supervised its cleanup of the Davis site. Court Galvanizing has paid a total of $79,644 in oversight costs to the RWQCB in connection with the remediation of the Davis site.[2]
 
 
 6
 The DTSC also conducted investigative and oversight activities at the Davis site, which included evaluation and analysis of the releases and threatened releases of hazardous substances, sampling and chemical analysis, and evaluation of proposed remediation of contaminated soil and groundwater. In 1987, DTSC issued an order determining that hazardous substances were present at the Davis site, constituting a threat to public health and safety. It ordered Court Galvanizing and other parties to take necessary response actions.
 
 
 7
 DTSC filed this action under § 9607(a) to recoup response costs incurred in the investigation and supervision of the cleanup actions at the Davis site. The district court granted DTSC's motion for partial summary judgment, establishing liability against both Court Galvanizing and North and awarding $202,178.68 in damages.[3]
 
 
 8
 On appeal, appellants raise only a single issue. They assert that causation is a necessary element which a plaintiff must prove to recover under § 9607, and that DTSC failed to prove this element.
 
 DISCUSSION
 
 9
 We review the grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). The district court's interpretation of CERCLA is also reviewed de novo. United States v. Louisiana-Pacific Corp., 754 F.2d 1445, 1447 (9th Cir.1985). The relevant portion of the statute states that any of four classes of responsible persons[4] connected with a facility
 
 
 10
 from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
 
 
 11
 (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
 
 
 12
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan....
 
 
 13
 42 U.S.C. § 9607(a)(4).
 
 
 14
 Courts have interpreted the statute to require a private party plaintiff to prove four elements to establish liability: (1) The site is a "facility" as defined in § 9601(9); (2) A "release" or threatened release of a "hazardous substance" from the facility has occurred as defined in § 9601(14) and (22); (3) The release or threatened release has caused plaintiff to incur response costs consistent with the national contingency plan (NCP); and (4) Defendants fall within one of the four classes of responsible persons set forth in the statute. 3550 Stevens Creek Assoc. v. Barclays Bank, 915 F.2d 1355, 1358 (9th Cir.), cert. denied, 111 S.Ct. 2014 (1991); Ascon Properties Inc. v. Mobil Oil Co., 866 F.2d 1149, 1152-53 (9th Cir.1989).
 
 
 15
 A government agency plaintiff in a CERCLA cost recovery action, such as DTSC, must establish the same elements, except that it has a lower standard in establishing consistency with the NCP. Under § 9607(a)(4)(A), a responsible party is liable to the government for all response costs "not inconsistent" with the NCP. Washington State Dep't of Transp. v. Washington Natural Gas, 59 F.3d 793, 799-98 (9th Cir.1995).
 
 
 16
 In granting DTSC's motion for summary judgment, the trial court found that DTSC met these elements. Appellants do not contest the trial court's determination that the Davis site is a facility, that a release of hazardous substances occurred, or that appellants are responsible persons. Moreover, appellants do not argue that the response actions of the DTSC are inconsistent with the NCP. Instead, appellants' sole argument on appeal is that the DTSC failed to prove causation. Appellants assert that the release of hazardous substances at the Davis site did not cause DTSC to incur response costs, because appellants were already engaged in cleanup under the supervision of the RWQCB before DTSC became involved. They further assert that DTSC's response costs were caused by an interagency power struggle between the DTSC and the RWQCB.
 
 
 17
 There is no dispute that a showing of causation is a necessary element for a prima facie case for cost recovery in cases of threatened releases. However, the DTSC argues that a plaintiff need not prove causation in cases of actual releases. The issue of whether the cause element is limited only to threatened releases was not addressed by the trial court. For the purposes of deciding the summary judgment motion, the trial court stated that the State had to prove that "there was a release of hazardous substances which caused plaintiff to incur response costs."
 
 
 18
 To be sure, CERCLA and causation "have enjoyed an uneasy co-existence." See Nagle, CERCLA, Causation and Responsibility, 78 Minn.L.Rev. 1493 (1994). While courts have held that CERCLA does not import traditional tort notions of causation and culpability, Nurad, Inc. v. William E. Hopper & Sons Co., 966 F.2d 837, 846 (4th Cir.), cert. denied 113 S.Ct. 377 (1992); Louisiana-Pacific Corp. v. Beazer Materials & Serv. Inc., 811 F.Supp. 1421, 1430 (E.D.Cal.1993); United States v. Wade, 577 F.Supp. 1326, 1333 (E.D.Pa.1983), a number of courts have concluded that proof of some causal link between a defendant's release and a plaintiff's response forms an element of a plaintiff's prima facie case under CERCLA. Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 670-71 (5th Cir.1989); United States v. Nicolet, Inc., 712 F.Supp. 1205, 1207 (E.D.Pa.1989); Dedham Water Co. v. Cumberland Farms, Inc., 689 F.Supp. 1223, 1224 (D.Mass.1988), rev'd on other grounds, 889 F.2d 1146, 1151-54 (1st Cir.1989).
 
 
 19
 This causation debate is rooted in 42 U.S.C. § 9607(a)(4), which provides that liability for costs of response shall attach to persons connected with a facility "from which there is a release, or threatened release which causes the incurrence of response costs...." (Emphasis added.) The issue is whether Congress intended that the word "causes" should limit only "threatened release," or whether the drafters unintentionally omitted a comma after "threatened release" such that "causes" limits both "threatened release" and "release." See, e.g., Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 935 n. 8 (8th Cir.1995).
 
 
 20
 As noted, we have held that to state a claim under § 9607(a), a plaintiff must allege that a release or threatened release of a hazardous substance caused it to incur response costs. 3550 Stevens Creek Assoc., 915 F.2d at 1358; Ascon Properties, 866 F.2d at 1152-53. However, because it was unnecessary for their resolution, these cases did not analyze the causation element. Similarly, in the case at bench, we need not decide whether a showing of causation is required where there has been an actual release of hazardous substances because, even assuming such a requirement, the record demonstrates that DTSC met that burden.
 
 
 21
 In single generator cases, such as this one, "if the response costs were justified, the defendant necessarily caused the incurrence of those costs." United States v. Alcan Aluminum Corp., 964 F.2d 252, 266 (3d Cir.1992). Thus, the relevant causation inquiry is whether there is a nexus between the release and the response cost incurred. See Amoco Oil, 889 F.2d at 670. "This is not an inquiry into plaintiffs' state of mind. [Citation omitted.] Instead it is a 'factual inquiry into the circumstances of the case and should focus on whether the particular hazard justifies any response actions.' " Arizona v. Motorola, Inc., 805 F.Supp. 742, 746 (D.Ariz.1992) (quoting Amoco Oil, 889 F.2d at 670).
 
 
 22
 It undisputed that waste liquids containing hazardous substances, generated by appellants' metal plating operations, contaminated the soil at the Davis site. As a result of the contamination, DTSC conducted inspections at the site, issued an administrative order requiring appellants to take necessary response actions, supervised these response actions, evaluated and analyzed the hazardous substances released, sampled and tested the soil, and reviewed the cleanup proposals submitted by appellants. These uncontroverted facts adequately support the required causal connection between the release of hazardous substances and DTSC's incurrence of response costs.
 
 
 23
 Appellants assert that their admitted release of hazardous substances did not cause DTSC's response costs, but rather that these response costs were caused by DTSC's power struggle with another state agency. However, appellants are unable to cite any support for their contention that an alleged interagency turf battle and the asserted duplication of efforts negates a party's liability under CERCLA.
 
 
 24
 Appellants reliance on Motorola, 805 F.Supp. 742, is misplaced. There, the court held that genuine issues of material fact existed as to whether the release of hazardous waste justified each particular response action at the site and that these issues of fact precluded summary judgment for the defendant. Id.
 
 
 25
 Significantly, appellants offered virtually no evidence that the efforts of DTSC were inappropriate, regardless of whatever actions were being taken by the RWQCB. Appellants claim that the involvement of DTSC, and its lack of coordination with the RWQCB, increased the time and expense required for the remediation of the site. However, the alleged lack of coordination between the two agencies is simply appellants' opinion, unsupported by any specific factual showing. Appellants further contend that there were no significant or substantive cleanup and remediation elements imposed by DTSC which would not have been required by the RWQCB. Again, appellants fail to identify particular DTSC cleanup efforts which were allegedly duplicative, merely speculating what the RWQCB might have done in the absence of DTSC involvement.
 
 
 26
 In the absence of specific evidence of unnecessary increases in cost due to a lack of coordination between the two agencies, we conclude that the legitimate exercise of jurisdiction by one state agency over a matter where another state agency is already asserting jurisdiction, does not amount to inconsistency with the NCP or a failure to prove causation.
 
 CONCLUSION
 
 27
 The uncontroverted facts support the district court's determination that the release of hazardous substances at the Davis site caused DTSC to incur response costs.
 
 
 28
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Since the parties and the district court are familiar with the record, we need not recite the details of the metal galvanizing process employed at the Davis site
 
 
 [2]
 This amount is in addition to the $202,178.68 that Court Galvanizing was ordered to pay DTSC, which is the subject of this appeal
 
 
 [3]
 DTSC moved for a determination of liability and the recovery of response costs of $202,178.68, covering the period through June 30, 1994. However, when the district court granted its motion for summary judgment, awarding all $202,178.68 sought for that period, DTSC agreed to the entry of final judgment, thereby waiving recovery of any on-going costs in this action
 
 
 [4]
 Owners, operators, generators, and transporters of hazardous substances are listed as responsible persons. 42 U.S.C. § 9607(a)(1)-(4)