**LOUISIANA–PACIFIC CORPORATION, a Delaware corporation, Plaintiff,**

v.

**BEAZER MATERIALS & SERVICES, INC., a Delaware corporation, as Successor in Interest to Koppers Company, Inc., a Delaware corporation, et al., Defendants.**

**No. CIV. S–89–871 LKK.**

United States District Court, E.D. California.

Jan. 27, 1993.

---

James C. Collins, Greg M. Block, Thelen, Marrin, Johnson & Bridges, San Francisco, CA, for plaintiff.

Gregory P. Stone, Patrick J. Cafferty, Munger, Tolles & Olson, San Francisco, CA, for defendants.

## AMENDED ORDER

KARLTON, Chief Judge Emeritus.

This matter is before the court on defendant Beazer East Inc.'s ("Beazer") motion for summary judgment. Following oral argument the parties were directed to file supplemental briefs.[1] Thereafter, the mat-

---

1. In that same order, the court denied Beazer's motion for summary judgment on Louisiana–Pacific's federal declaratory relief claim for the expenses of the EPA investigation; denied Beazer's request that this court exercise its discretion not to hear Louisiana Pacific's supplemental

ter was resubmitted and is disposed of herein.

For the reasons herein stated, Beazer's motion is granted in part and denied in part.

# I

## THE FACTS AND THE COMPLAINT

### A. *The Undisputed Facts*

Plaintiff Louisiana–Pacific owns and operates a sawmill site and landfill in Oroville, California. Each of these non-adjacent sites are on the Superfund National Priorities List ("NPL"). Beazer operates a log processing plant, "the Koppers Site," adjacent to Louisiana–Pacific's sawmill site. This site is also on the Superfund NPL. It is undisputed that Beazer dumped large amounts of pentachlorophenol into the water flowing between the properties. This water ultimately collected in a log deck pond located on Louisiana–Pacific's sawmill site, where the plaintiff used it for various purposes related to its operation of the mill.

After the sawmill and landfill were placed on the NPL, the Environmental Protection Agency ("EPA") and Louisiana–Pacific entered into negotiations for a consent order providing for the investigation and cleanup of the sites. These negotiations broke down after Louisiana–Pacific refused . to agree to a provision that would have imposed stipulated penalties without the availability of judicial review for whatever future work EPA might require beyond that delineated in the original work plan.

Upon failure to reach an agreement, EPA conducted an investigation of the Louisiana–Pacific sites. In a separate suit, it is now seeking reimbursement of over $3.6 million for the costs of that investigation. *See United States v. Louisiana–Pacific,* CIV–S–92–2023 LKK/PAN (E.D.Cal. filed December 4, 1992). Louisiana–Pacific also conducted an investigation of the sites.

### B. *The Complaint*

In this suit, Louisiana–Pacific seeks, inter alia, recovery from Beazer of its costs of investigation and a declaratory judgment concerning future liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERC-LA"), 42 U.S.C. §§ 9601–75, including the cost of the EPA investigation.

Louisiana–Pacific alleges five causes of action:

(1) Recovery of presently incurred costs of response pursuant to 42 U.S.C. § 9607(a)(1) or. (a)(2);

(2) A judgment declaring that Beazer is liable for future costs of response pursuant to 42 U.S.C. § 9613(g)(2) and 28 U.S.C. § 2201(a);

(3) Declaratory relief for indemnity or contribution;

(4) Damages under a state cause of action in trespass; and

(5) Damages under a state cause of action in nuisance.

Beazer now moves for summary judgment on the various grounds discussed below.

The standards for summary judgment are well-known and need not be rearticulated here. *See, e.g., Clark v. Kizer,* 758 F.Supp. 572, 574–75 (E.D.Cal.1990).

# II

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In its first cause of action, Louisiana–Pacific seeks recovery under CERCLA for the costs it has incurred in association with the investigation it conducted.

### A. *Necessary and Consistent with the NCP*

Under the statute, private parties may only recover response costs which are "necessary" and "consistent with the national contingency plan ("NCP"), *see* 42 U.S.C.

state claims; granted Beazer's motion for summary judgment on Louisiana–Pacific's negligence claim as barred by the statute of limita-

tions; and denied Louisiana–Pacific's motion for leave to amend.

§ 9607(a)(4)(B).[2] Beazer maintains that as a matter of law the costs associated with Louisiana–Pacific's site investigation cannot be considered "necessary" and "consistent with the national contingency plan" because it was duplicative of the EPA's investigation.[3] It argues that the purpose of Louisiana–Pacific's investigation was to demonstrate that Beazer was the source of contamination and thus the cost of investigation should be characterized as "litigation expenses" not recoverable under CERCLA.[4] Louisiana–Pacific argues that its investigation, nearly completed prior to the EPA undertaking its investigation, was not designed solely to develop evidence against Beazer, but was designed to determine the extent and source of contamination on its sites and is thus a recoverable response cost.

█ A claim of inconsistency with the NCP is not a defense to liability under CERCLA, but goes only to the issue of damages. *Mid Valley Bank v. North Valley Bank*, 764 F.Supp. 1377, 1389 (E.D.Cal. 1991) (citing *Cadillac Fairview/Cal., Inc. v. Dow Chemical Co.*, 840 F.2d 691, 695 (9th Cir.1988)). Nonetheless, even viewed as a matter of damages, if Louisiana–Pacific simply may not recover any part of the costs incurred for its investigation as a matter of law, Beazer is entitled to a pretrial limitation of the scope of· damages available to Louisiana–Pacific in this suit.[5]

Before turning to the substantive issue, the court must address a preliminary matter.

### 1. *EPA's Conduct*

It appears that the EPA conditioned Louisiana–Pacific's opportunity to conduct its own, potentially lower cost investigation, on the company's waiver of a right to judicial review of costs unrelated to the investigation which EPA might charge against it. In the order directing further briefing, I noted that neither party had addressed the question of whether EPA may properly condition a consent agreement on a waiver of a right to judicial review. In the absence of authority to compel such a waiver, it might be argued that the EPA's conduct in denying Louisiana–Pacific the opportunity to conduct the investigation was arbitrary and capricious, and thus EPA's investigation, rather than Louisiana–Pacific's, should be considered duplicative.

Upon further consideration, I have concluded that the instant suit, in which the EPA is not a party, is an inappropriate vehicle to determine whether the agency could require a waiver of judicial review as a condition of settlement. The court concludes that the issue of the propriety of EPA's conduct is properly reviewable in the suit where it seeks recovery of costs for its investigation from Louisiana–Pacific. Accordingly, I turn to the issue of necessity and consistency without regard to the propriety of the EPA's conduct.[6]

---

2. The statute provides in pertinent part that specified defendants shall be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan," 42 U.S.C. § 9607(a)(4)(B).

3. I agree with both parties that the investigation should be considered a response action. 42 U.S.C. § 9601(25) defines "response" to include "removal." Section 9601(23) defines "removal" to include conduct "necessary to monitor, assess, and evaluate the release ... of hazardous substances [and] action taken under section 9604(b) of this title." *See also Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 892 (9th Cir.1986).

4. Attorneys' fees and litigation expenses are not recoverable in private causes of action under CERCLA. *Stanton Road Associates v. Lohrey Enterprises*, 984 F.2d 1015 (9th Cir.1993).

5. Ordinarily, questions of the extent of recovery available are determined pursuant to motions to strike portions of the prayer. The court, however, cannot fault the use of summary judgment to achieve the same result.

6. Because the court need not resolve the question of whether EPA improperly conditioned Louisiana–Pacific's opportunity to conduct its own investigation, I need not address the question whether the agency is a necessary or indispensable party under Rule 19. If it is determined in *United States v. Louisiana–Pacific*, CIV–S–92–2023 LKK/PAN, that EPA may not recover the costs of its Louisiana–Pacific site investigation, Beazer need not fear inconsistent judgments because Louisiana–Pacific could not seek recovery of a non-awarded amount. If Beazer fears that Louisiana–Pacific will fail to raise such a defense and that it may therefore be liable for those costs pursuant to Louisiana–

### 2. *Louisiana–Pacific's Conduct*

■ Plaintiff, as the party seeking cost recovery, bears the burden of proving necessity and consistency with the NCP. *United States v. Hardage*, 982 F.2d 1436, 1442 (10th Cir.1992), (citing *United States v. Northeastern Pharmaceutical*, 810 F.2d 726, 747 (8th Cir.1986)); *County Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1512 (10th Cir.1991); *Cadillac Fairview*, 840 F.2d at 695; *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.*, 596 F.Supp. 283, 290 (N.D.Cal.1984). As a general matter, investigative costs incurred by a private party after the EPA has initiated a remedial investigation, unless authorized by the EPA, are "duplicative" and therefore not recoverable. *U.S. v. Hardage*, 750 F.Supp. 1460, 1511–17 (W.D.Okla.1990), *aff'd*, 982 F.2d 1436, 1447–48 (10th Cir.1992). As the district court in *Hardage* persuasively demonstrated, the measure of necessity is confined to the costs of removal or remedial actions, *Hardage*, 750 F.Supp. at 1509–11. *See also Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1535–37 (10th Cir.1992) (necessary costs are only those incurred in the containment and cleanup of hazardous releases). Accordingly, where costs have been incurred solely to defend against the government's action, they are not "necessary" within the meaning of CERCLA § 107(a)(4)(B). *Hardage*, 750 F.Supp. at 1511, *aff'd*, 982 F.2d at 1448. *See also Fallowfield Dev. Corp. v. Strunk*, 1991 WL 17793 at 19 (E.D.Pa.1991) (investigation that is duplicative and undertaken in anticipation of litigation is not a "necessary cost of response").

■ It is not disputed that after settlement negotiations broke down, the EPA explicitly informed Louisiana–Pacific of its intent to conduct an investigation; nor is it disputed that thereafter, but prior to the commencement of EPA's investigation, Louisiana–Pacific proceeded with its own unauthorized investigation. It is also not disputed that the EPA and Louisiana–Pacific investigations were essentially the same. Louisiana–Pacific asserts, however, that it undertook its investigation in good faith, assuming that the EPA would come around to its position and cancel its planned investigation. Given the conclusion reached above, that the propriety of the EPA's conduct is not relevant to this suit, that assertion appears irrelevant.

Clearly Louisiana–Pacific could not have prevented EPA's actions at the time. *See* 42 U.S.C. § 9613(h); *Fairchild Semiconductor Corp. v. EPA*, 984 F.2d 283 (9th Cir.1993). Moreover, it may well be that as a matter of sound business and litigation judgment Louisiana–Pacific had to conduct its own investigation to make certain that the EPA conclusions were justified.[7] The issue is not Louisiana–Pacific's good faith or the reasonableness of the conduct. The issue is who should pay for its exercise of business and litigation judgment, even assuming good faith.

The effect of allowing Louisiana–Pacific to recover its investigation costs is to give it discretion, not merely to double the response costs, but potentially to pass those increased costs on to third parties without notice or consent. Nothing in the statute suggests such a result, and arguably, such a result violates the statutory requirement that remedial actions be cost-effective. *See* 42 U.S.C. § 9605(a)(7); *County Line Inv. Co.*, 933 F.2d at 1514.

I conclude that once EPA notified Louisiana–Pacific that it was conducting its own investigation, *see* 42 U.S.C. § 9604, relative to claims against third parties Louisiana–Pacific's unapproved investigation was duplicative and thus unnecessary, and accordingly, not recoverable under 42 U.S.C. § 9607(a)(4)(B). Thus, insofar as Louisi-

Pacific's declaratory relief claim, Beazer may choose to intervene in that action and make such an argument. *See* Rule 24 and 42 U.S.C. § 9613(i).

7. Louisiana–Pacific suggests that conducting its own study could provide evidence that the EPA's study was not cost-effective. Once again,

that is an issue for the suit between the EPA and Louisiana–Pacific. I note, however, that various district courts have held that the EPA does not have a duty to minimize or to mitigate damages. *See United States v. Atlas Minerals and Chemical, Inc.*, 797 F.Supp. 411, 417 n. 13 (E.D.Pa.1992); *United States v. Kramer*, 757 F.Supp. 397, 420–21 (D.N.J.1991).

ana–Pacific seeks recovery of the costs associated with any part of its investigation conducted after October 8, 1986,[8] the date it received notice from the EPA that its investigation was not authorized and that EPA would conduct the investigation, plaintiff's claim cannot stand.

Defendant's motion for summary judgment relative to the issue of costs incurred in relation to Louisiana–Pacific conducting its own investigation after notice was received, is granted. Insofar as Louisiana–Pacific seeks recovery of costs associated with its investigation incurred prior to EPA's notice, the determination of whether those costs were necessary and consistent with the NCP must await determination at the damages stage. *See Cadillac Fairview/Cal.*, 840 F.2d at 695 (holding that prior government approval not necessary in order for investigation costs to be classified as "necessary" or "consistent with the NCP").

### B. *Causation*

■ Both parties assume that a private CERCLA plaintiff must prove causation; moreover, they both agree that the causation issue is not whether defendant caused a release of hazardous substances, but whether defendant caused the incurring of response costs. Each argues the summary judgment motion premised upon these assumptions.

Although a number of courts have held that a relevant inquiry under CERCLA is whether hazardous substances were deposited at the site from which there was a release and whether that release caused the incurring of response costs, *see, e.g., United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 266 (3d Cir.1992), the Ninth Circuit has not decided whether a causal connection between an actual release and

the incurred response costs is a necessary predicate to liability under CERCLA. *See Mid Valley Bank*, 764 F.Supp. at 1388; *State of Arizona v. Motorola, Inc.*, 805 F.Supp. 742, 746 (D.Ariz.1992).[9]

As with any question of statutory interpretation, a district court must first determine whether there is binding authority construing the statute. *Tello v. McMahon*, 677 F.Supp. 1436, 1441 (E.D.Cal.1988). If not, as in this case, the court must undertake its own analysis of the statute's meaning. Below, I conclude that where there is an actual release, a plaintiff need only demonstrate a nexus between a party defined in section 9607 and the response costs to hold that defendant liable.

Analysis begins with the language of the statute. Section 9607 provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or

---

**8.** The letter from Jon K. Wactor, Assistant Regional Counsel for the EPA, read, inter alia, "[g]iven that we have not been able to reach agreement on the Consent Order, EPA has decided to move ahead with its investigation at the L–P site." *See* Decl. of Marie M. Rongone in Support of Beazer's Mot. for S.J., exh. 35, filed 8/12/91. In another letter dated November 26, 1986, the EPA opined that "any investigation L–

P performs is taken at its own expense and will not affect EPA's investigation."

**9.** In dicta, the Ninth Circuit has suggested that CERCLA imposes a causation element relative to actual releases as a precondition to recovery by a private party. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir. 1989).

a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable....

42 U.S.C. § 9607.

As I have previously explained, "the strange paragraphing of the statute ... appears to be a printer's error." *Mid Valley Bank,* 764 F.Supp. at 1387. Thus the phrase in subparagraph (4) of section 9607(a), "from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable" was apparently intended to modify each provision of subparagraphs (1)–(4).

Once a party is shown to fall within one of the classes specified in section 9607(a),[10] CERCLA makes that party liable for clean-up costs incurred by the government and, as noted above, for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." The statute further provides that "[t]he terms 'liable' or 'liability' under this subchapter shall be construed to be the standard of liability which obtains under section 1321 of Title 33." 42 U.S.C. § 9601(32). Because section 1321 of the Clean Water Act imposes strict liability, *United States v. Dae Rim Fishery Co., Ltd.,* 794 F.2d 1392, 1394 (9th Cir.1986), courts have construed CERCLA as imposing strict liability. *Alcan Aluminum Corp.,* 964 F.2d at 259; *Dedham Water Co. v. Cumberland Farms Dairy,* 889 F.2d 1146, 1150 (1st Cir.1989); *United States v. Monsanto,* 858 F.2d 160, 167 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156,

104 L.Ed.2d 1019 (1989); *State of N.Y. v. Shore Realty Corp.,* 759 F.2d 1032, 1042 (2d Cir.1985). Put another way, upon the occurrence of the statutorily-specified event, liability will be imposed on any party falling within a class defined in section 9607(a), without regard to fault, subject only to the defenses to liability imposed by section 9607(b). That provision insures that liability imposed under CERCLA is strict rather than absolute.[11] *See Prosser and Keeton on Torts* § 79 at 563–64, noting that acts of God, war, or independent third parties generally fall outside the ambit of strict liability.

Because the issue was not tendered in *Mid Valley Bank,* I did not reach or resolve the question of whether cause must be proved where there was an actual release. In that case, confining myself to the issue tendered, I determined that a plaintiff must prove that a threatened release caused the incurred response costs sought in the suit. 764 F.Supp. at 1388. I now turn to the unresolved issue.

The court is called upon to determine whether the statutory language, "from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance," creates a causation element in the cause of action for recovery costs under CERCLA where there is an actual release. Because of the lack of a comma after the phrase "threatened release" the most natural reading of the statutory language is that the causation language modifies only that phrase.[12] Nor can it be argued that such a

---

**10.** Louisiana–Pacific bases its theory of recovery on either section 9607(a)(1) or 9607(a)(2).

**11.** Subsection 9607(b) provides: "There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were cause solely by (1) an act of God; (2) an act of war; (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by

rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or (4) any combination of the foregoing paragraphs."

**12.** Even if the punctuation creates an ambiguity, I am bound to construe the statute according to its natural reading. *See Gwaltney v. Chesapeake Bay Found.,* 484 U.S. 49, 57, 108 S.Ct. 376, 380–81, 98 L.Ed.2d 306 (1987) ("to acknowledge am-

reading is irrational because there is no basis for distinguishing between actual and threatened releases. Congress could well have assumed that an actual release would inevitably result in the incurrence of response costs while believing a threatened release would not necessarily do so, and thus impose a duty to prove causation only in the latter case. For this reason, Congress could have intended that a party actually releasing hazardous substances be liable without proof that the release resulted in response costs.

While the statute's syntax makes it difficult to read the causation term as modifying both "release" and "threatened release," both parties argue that there is a causation element. Below, I examine their arguments and explain why I do not find them persuasive.

Louisiana–Pacific contends that such a construction is required to avoid absurdity.[13] It suggests that if the causation requirement is construed to only modify cases of "threatened releases," there is the potential for the imposition of liability for the incurrence of response costs for site cleanups not even remotely connected to the site in issue.[14] The argument is not persuasive.

Even under Louisiana–Pacific's version of the statute, liability to the government can only be imposed for costs incurred consistent with the NCP, and in the case of third parties, an additional requirement of necessity exists. These provisions suffice to require that a plaintiff show a nexus between the polluted site and the incurred response costs.[15] Because Louisiana–Pacific's premise is faulty, its absurdity argument cannot prevail.

Beazer also argues that a causation element attaches to cases of actual release. It proposes that the term incorporates traditional tort notions of causation, i.e., legal or proximate causation.

Beazer acknowledges that to read the causation requirement as a modifier of actual releases, a comma must be supplied after "threatened release" (i.e., the statute would read "from which there is a release, or a threatened release, which causes the incurrence of response costs"). Beazer asserts that this court should supply such a comma because to fail to do so would distort the meaning of the statute. 2A Sutherland, Statutory Construction § 47.15 ("A misplaced comma cannot be used to distort the meaning of the statute").

Given the haste in which this statute was drafted, see Mid Valley Bank, 764 F.Supp. at 1387; Shore Realty Corp., 759 F.2d at 1043 n. 16; and Dedham Water Co., 889 F.2d at 1151 n. 4, it is not unreasonable to conclude that the critical comma was inadvertently omitted. Nonetheless, as I explain below, Beazer's argument cannot prevail.

I begin by noting that it is not clear that the canon of construction advanced by Beazer applies to the matter at bar. What

biguity is not to conclude that all interpretations are equally plausible, [rather, the court is to prefer the] natural reading").

13. While Louisiana–Pacific asserts that causality is a requisite to liability, it does not assert that the term incorporates traditional tort notions of causation. It argues that "[i]f an actual release of hazardous substances constitutes or substantially contributes to the existence of a danger or hazard to the public health or welfare or to the environment and costs are incurred in response to the danger for which the expenditure of public funds would have been authorized under Sections 104(a)(1) and 104(b)(1) of CERCLA, then the incurrence of those response costs is 'caused' by the actual release of hazardous substances within the meaning of Section 107(a)." Louisiana–Pacific's Supp.Br. in Opp'n at 34, filed February 21, 1992.

14. Omitting the causation requirement from cases of actual releases, the statute reads: "[t]he owner and operator of ... a facility ... from which there is a release ... of a hazardous substance, shall be liable for ... all costs of removal or remedial action incurred by the United States ... not inconsistent with the national contingency plan [and] any other necessary costs of response incurred by any other persons consistent with the national contingency plan."

15. It seems relatively certain that the adoption of a NCP permitting recovery on nonrelated sites would be arbitrary and capricious in the extreme, and could not survive judicial scrutiny.

is before the court is not an asserted misplaced comma, but an absent one. Even assuming the application of the doctrine, however, it does not resolve the issue tendered.

Application of the canon requires some basis for finding that the statute's purpose would be distorted by not imposing a causal element. In that regard, Beazer tenders nothing from the statute itself or the legislative history which demonstrates that the statute's purpose would be distorted by failing to supply the missing comma.

I have said, relying on Ninth Circuit precedent, that CERCLA's underlying purpose is "to ensure the prompt and effective cleanup of waste disposal sites, and to assure that parties responsible for hazardous substances bore the costs of remedying the conditions they created." *Mid Valley Bank*, 764 F.Supp. at 1389 (quoting *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1455 (9th Cir.1986); *see also Kaiser Aluminum v. Catellus Dev.*, 976 F.2d 1338, 1340 (9th Cir.1992). To the extent that this observation connotes notions of culpability, it is too broad. The imposition of strict liability means that defendants may be required to contribute to a cleanup even though they were not responsible, in a culpability sense, for the creation of the condition. For this reason, the imposition of liability without requiring proof that the actual release caused the incurring of response costs cannot be said to distort the statute. Moreover, adopting Beazer's argument leads to an anomalous result.

Under its interpretation, causation, rather than turning "upon a factual inquiry into the circumstances of a case ... focus[ing] on whether the particular hazard justified any response actions," *Mid Valley Bank*, 764 F.Supp. at 1389 (quoting *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 670 (5th Cir.1989)), would make resolution of questions of liability turn on what releases prompted EPA to place the site on the Superfund list, thereby technically causing the incurrence of response costs. It seems unlikely that Congress intended resolution of CERCLA cases to depend upon which potentially responsible party's actions alerted the EPA to a possible problem rather than upon the amount, manner or toxicity of the releases.

For all the above reasons, I find the parties' argument in favor of a causation element unpersuasive. In the absence of internal statutory evidence, or at least clear legislative history, this court is not free to depart from the words and grammar of the statute. I thus conclude that the statute does not impose a causation element as a predicate to liability where a defendant falls within one of the four statutorily-defined classes and there has been an actual release. *See Shore Realty Corp.*, 759 F.2d at 1044 ("section 9607(a)(1) unequivocally imposes strict liability on the current owner of a facility from which there is a release ... without regard to causation").[16] Having said as much, it

16. In the text, I concur with the Second Circuit that causation need not be proved where a plaintiff demonstrates an actual release and a nexus between the incurring of response costs and a defendant within one of the classes defined in 42 U.S.C. § 9607(a). Nonetheless, I cannot agree with one of the arguments that the court tendered in support of its conclusion. It argued that since 42 U.S.C. § 9607(b) denies liability where releases or threatened releases are solely the result of circumstances beyond the control of the defendant, for instance, acts of God, imposing a causation element would render that subsection surplusage, *see Shore Realty Corp.*, 759 F.2d at 1044, thus violating the fundamental canon requiring a statutory construction insuring that "every word has operative effect." *Natural Resources Defense Council v. Patterson*, 791 F.Supp. 1425, 1431 (E.D.Cal. 1992). The argument does not lie. It is, of course, true that under the circumstances specified in subsection (b), a plaintiff simply could not show a defendant caused a release. Nonetheless, the subsection is not surplusage. In *Mid Valley Bank, supra,* I concluded that causation must be shown in cases predicating liability on a threatened release. In such cases, by necessary implication subsection (b)'s effect is to permit a finding of liability where a threatened release results from a cause specified therein conjoined with the conduct of a defendant. Put another way, by virtue of the word "solely" the statute provides that a defendant will not escape liability where a threatened release resulted from his conduct and, *e.g.*, an act of God.

In the text I have concluded, consistent with *Shore Realty Corp.*, that causation need not be proven in cases of actual release. It is clear that subsection (b) is highly relevant to such cases. The effect of subsection (b) where there is an

does not follow that no relationship between the defendant and the incurrence of costs need be shown.

In enacting CERCLA, Congress specifically refused to adopt traditional elements of tort culpability. *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 846 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992) (citing *Monsanto*, 858 F.2d at 168 and *Shore Realty*, 759 F.2d at 1044). Given the statute's broad imposition of liability and limited defenses, it has been repeatedly held that CERCLA does not import traditional tort notions of causation, *United States v. Stringfellow*, 661 F.Supp. 1053, 1060–61 (C.D.Cal.1987), *rev'd on other grounds,* 911 F.2d 225 (9th Cir.1990), but rather imposes merely a nexus requirement. *State of Arizona v. Motorola, Inc.*, 805 F.Supp. at 746; *United States v. Distler*, 803 F.Supp. 46, 50 (W.D.Ky.1992); *Louisiana–Pacific Corp. v. ASARCO, Inc.*, 735 F.Supp. 358, 362 (W.D.Wash.1990); *United States v. Bliss*, 667 F.Supp. 1298, 1309–10 (E.D.Mo.1987); *Artesian Water Co. v. Gov. of New Castle County*, 659 F.Supp. 1269, 1282 (D.Del.1987), *aff'd,* 851 F.2d 643 (3d Cir.1988); *Violet v. Picillo*, 648 F.Supp. 1283, 1292 (D.R.I.1986), *overruled in part on other grounds,* 794 F.Supp. 61 (D.R.I. 1992); *United States v. Wade*, 577 F.Supp. 1326, 1333 (E.D.Pa.1983); *Toxic Waste Litigation*, 99 Harv.L.Rev. 1458, 1520 (1986). *See also Dedham Water Co.*, 889 F.2d at 1154 n. 8.[17]

I must respectfully suggest that a rationale for a lesser standard of causation premised on the statute's imposition of strict liability is not persuasive. There is nothing about strict liability which compels a diminished causation standard; plaintiffs must ordinarily prove proximate cause

even where the law of torts imposes strict liability. *See Shore Realty Corp.*, 759 F.2d at 1044 n. 17 (citing W. Prosser, *Handbook of the Law of Torts* § 79 at 517 (1971). Nonetheless, I concur in the result reached by the overwhelming number of district court cases that have addressed this issue.

As noted above, to recover under CERCLA a private party must show conformance to the NCP and necessity. In effect, these requirements impose a nexus requirement. Put simply, if the plaintiff is unable to demonstrate some nexus between the defendant and the incurred response costs, those costs are not necessary and are unlikely to have been incurred in response to the NCP. *See* footnote 15, *supra.*

Turning to the matter at bar, I conclude that so long as Beazer's undisputed release of hazardous substances had some connection with Louisiana–Pacific's incurrence of response costs, it may be liable for some portion of those costs. The extent of damages which Louisiana–Pacific may recover, of course, must be determined at a later point in this litigation. *See, e.g., United States v. Monsanto*, 858 F.2d at 171–73.

For all the above reasons, and because Louisiana–Pacific has met its burden of showing a nexus between Beazer's releases and its incurrence of response costs, Beazer is not entitled to judgment in its favor as a matter of law premised on a failure of plaintiff to prove proximate cause.

## C. *Facility*

Throughout its briefs, Beazer inferentially argues that the "facilities" at issue in this case are the various portions of Louisiana–Pacific's property at which the investigations were conducted. These proposed

---

actual release is to deny liability where a nexus is shown, but a subsection (b) event causes an actual release. Put another way, even though a plaintiff proves a nexus between the incurring of costs responsive to an actual release and a defendant who is a member of a class specified in subsection (a), liability will not be imposed where the release or the damages were caused solely by, *e.g.,* an act of God.

**17.** Many of the cases arose in the context of multiple generators and the migration and com-

mingling of hazardous substances. Courts have justified the lesser standard in those situations based on the difficulty of identifying the contamination sources. *See, e.g., United States v. Bliss,* 667 F.Supp. at 1309–10. Similar concerns are presented here. In any event, whatever the rationale, the question is one of identifying a standard. Nothing in the statute suggests the existence of a variable standard depending on context.

facilities include areas of the sawmill site including the fungicide spray area, the western sump area, the log deck area, log deck pond area and the boundary area, and the landfill site. Beazer's Supp.Memo. in Support of Mot. for SJ at 23 (filed 1/13/92). Conversely, Louisiana–Pacific asserts that the sole facility at issue here is Beazer's Koppers Site; that its theory of recovery is based on alleged releases of hazardous substances from the Koppers Site, thereby causing the incurrence of response costs by Louisiana–Pacific. Louisiana–Pacific's Supp.Memo. in Opp'n to Def.'s Motion at 43 (filed 2/21/92). This court's order ·requiring supplemental briefing directed both parties to discuss whether it is appropriate to divide the Louisiana–Pacific sawmill site into various "facilities" as that term is defined in 42 U.S.C. § 9601(9).

■ CERCLA section 101(9) defines "facility" as:

(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or

(B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

42 U.S.C. § 9601(9). The term "facility" has been broadly construed. The Ninth Circuit has held that "in order to show that an area is a 'facility,' the plaintiff need only show that a hazardous substance under CERCLA is placed there or has otherwise come to be located there." *People of the State of Cal. v. Blech*, 976 F.2d 525, 527 n. 1 (9th Cir.1992) (quoting *3550 Stevens Creek Assoc. v. Barclays Bank of California*, 915 F.2d 1355, 1360 n. 10 (9th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991)).

While it is true that at least one court has permitted a defendant to parcel out a site into various "facilities," *In re Allegheny Int'l, Inc.*, 126 B.R. 919 (W.D.Pa.1991),

nothing in CERCLA supports the notion that facility must be defined by or be coextensive with an owner's property lines. *Stringfellow*, 661 F.Supp. at 1059. Indeed, in a sense, Beazer's theory presumes a stricter causation analysis than this court has adopted. *See United States v. Bell Petroleum Services, Inc.*, 1989 WL 165554 at 4–5, 31 E.R.C. 1341, 20 Envtl.L.Rep. 21,117 (W.D.Tex.1989) ("to treat the site as two separate facilities is to impose a causation requirement ... where none is required.... Once a facility from which pollutants are released is identified, a causal connection between chrome in the soil and chrome in the aquifer is not required").

Nor does Beazer's lack of control over the hazardous substances released from its property but assertedly spread by Louisiana–Pacific justify its proposed division of the Louisiana–Pacific property. Louisiana–Pacific bases its claims on the allegation that Beazer had control of the hazardous substances at the time of release from the Koppers Site. *Cf. Nurad, Inc.*, 966 F.2d 837, 842 (4th Cir.1992). Under this theory, although Louisiana–Pacific's subsequent conduct may bear on the issue of damages, it is irrelevant for purposes of liability.

As the master of its complaint, Louisiana–Pacific has the discretion to formulate the legal theories on which it will base its claim. Here, pursuant to 42 U.S.C. § 9607(a), it alleges that Beazer is the owner or operator of a facility from which there was a release which caused the incurrence of response costs. Under the standard adopted above, a reasonable trier of fact may find a nexus between Beazer's releases and the incurrence of response costs at various portions of Louisiana–Pacific's sawmill and/or landfill sites. Again, the proper allocation of responsibility must await the damages portion of the case.

## III

## CONCLUSION

For all the above reasons, Beazer's motion for summary judgment is DENIED except relative to the costs associated with Louisiana–Pacific's own investigation of its

**1432**

site incurred subsequent to the EPA's October 8, 1986 notice that its investigation would not be approved; as to such costs the motion is GRANTED.

IT IS SO ORDERED.